UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JULIUS TERRELL, <u>et. al.</u>,           )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )   Civil Action No. 08-1641 (PLF)
                                    )
DISTRICT OF COLUMBIA, <u>et. al.</u>,     )
                                    )
        Defendants.                 )
_____)


<u>MEMORANDUM OPINION</u>

This matter is before the Court on the District of Columbia defendants' motion to dismiss. After careful consideration of the parties' papers, the relevant statutes and case law, and the entire record in this case, the Court will grant the motion.[1]

I. BACKGROUND

Plaintiffs, Julius Terrell and Tonya Butler-Truesdale, are former student hearing officers for the District of Columbia Public Schools ("DCPS"). <u>See</u> Compl. ¶ 5. The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 <u>et</u> <u>seq.</u>, requires that each state and the District of Columbia establish and maintain procedures to ensure that parents and children with disabilities have an opportunity to seek mediation and/or an impartial due process hearing to resolve disagreements over the identification, evaluation, educational placement, or provision of

---

[1] The Court had the following papers before it in connection with the motion: the Complaint ("Compl."); Defendants' Motion to Dismiss the Complaint ("Mot."); Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opp."); and Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss the Complaint ("Rep.").

a free appropriate public education for students with disabilities. When a dispute arises over any of these issues, a party to the dispute may request a due process hearing. See 20 U.S.C. § 1415. Hearing officers preside over these hearings and issue determinations regarding the dispute. Plaintiffs were employed to perform this function under a one-year contract executed with DCPS in February 2007, which was renewable for four additional years. See Compl. ¶ 5.

The timeliness and implementation of hearing officer decisions is a significant issue in a class action pending before this Court, Blackman v. District of Columbia, Civil Action No. 97-1629 (D.D.C.). The parties in Blackman entered into a Consent Decree, with the Court's approval, which established certain goals and requirements for timely issuance and enforcement of hearing officer decisions and settlement agreements in special education cases. See Blackman v. District of Columbia, 454 F. Supp. 2d 1 (D.D.C. 2006). Appended to the Consent Decree is a document entitled the Student Hearing Office Standard Operating Procedures ("SOP"), which among other things provides hiring requirements for hearing officers. See Consent Decree, Blackman v. District of Columbia, Civil Action No. 97-1629, Dkt. No. 1873, Ex. 2 (D.D.C. Aug. 24, 2006).

In May 2008, the District of Columbia Office of State Superintendent of Education ("OSSE") issued Solicitation Number DCGD-2008-R-02-0014 to select new hearing officers in a competitive bidding process. See Compl. ¶ 13. The solicitation did not require that the hearing officers be members of the District of Columbia Bar, that they have experience in special education or special education law, or that they have special training in handling administrative hearings, all of which had been requirements of the SOP. See id. On August 21, 2008, OSSE issued a Notice of Proposed Changes to the SOP suggesting changes consistent with

2

the solicitation. See id. ¶ 15. The proposed changes were adopted on August 28, 2008. See id. In the summer of 2008 plaintiffs interviewed for hearing officer positions, but they were not offered contracts. See id. ¶ 14.

Plaintiffs allege that they issued numerous decisions that required DCPS to place students in private placements at a significant cost to DCPS. See Compl. ¶ 7. Plaintiffs also allege that between 2007 and 2008, DCPS consistently paid them weeks after their paychecks were due. See id. ¶ 8. Plaintiff's allege that their contracts were not renewed because of the substance of their decisions and their complaints about being paid consistently late. See id. ¶¶ 7, 9, 11.

Plaintiffs assert five claims against the defendants: Count One is for violation of the District of Columbia Administrative Procedure Act, D.C. Code § 1-501, et seq.; Count Two is for violation of the Consent Decree entered by this Court in Blackman; Count Three is for violation of Fifth and Fourteenth Amendment due process rights brought pursuant to 42 U.S.C. § 1983; Count Four is for violation of the District of Columbia Whistleblower Protection Act, D.C. Code § 1-615.53 et seq.; and Count Five is for interference with employment contracts (asserted solely against defendant Gail ImObersteg).[2]

This matter previously was before the Court on plaintiff's motion for a temporary restraining order. On October 2, 2008, after oral argument on the motion, the Court issued an

---

[2] The District of Columbia filed a motion to dismiss on behalf of all defendants except Ms. ImObersteg. Ms. ImObersteg, who appears to have been a consultant employed by OSSE, has not filed any motion on her own behalf, nor has any counsel entered an appearance on her behalf. Although plaintiffs filed a return of service affidavit for the District of Columbia defendants, no such affidavit was filed for Ms. ImObersteg. It appears that plaintiffs never served her as required by Rule 4 of the Federal Rules of Civil Procedure.

oral ruling denying the motion. See Order, Dkt. No. 6 (D.D.C. Oct. 2, 2008). The Court also previously denied a motion by plaintiffs to intervene in the Blackman case. See Memorandum Opinion and Order, Blackman v. District of Columbia, Civil Action No. 97-1629, Dkt. 2126 (D.D.C. Oct. 1, 2008).

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)) (other citations omitted). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. As the Supreme Court recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court

4

to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556). A complaint alleging facts that are "'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557) (brackets omitted).

## III. DISCUSSION

The Court will begin its analysis with the claims asserted by plaintiffs under federal law. With regard to plaintiffs' second claim, for violation of the Consent Decree in the Blackman case, plaintiffs have no standing to seek enforcement of Consent Decree provisions in a case to which they are not parties. A consent decree is a contract, see Segar v. Mukasey, 508 F.3d 16, 21 (D.C. Cir. 2007), and typically only parties to a contract may sue for its violation. See, e.g., SEC v. Prudential Sec., 136 F.3d 153, 159 (D.C. Cir. 1998) (third parties to a consent decree only have enforcement rights under the consent decree if they can "demonstrate that they are intended beneficiaries," which means that the parties to the contract must have "intended that a third party should receive a benefit which might be enforced in the courts") (emphasis omitted). There is no basis to conclude that plaintiffs were intended beneficiaries of the Consent Decree.

Even if plaintiffs did have standing to pursue this claim, the Court previously has determined that the solicitation does not violate the Consent Decree. As the Court stated in its decision denying plaintiffs' motion to intervene in Blackman:

> Even if the Solicitation violated the SOP, the SOP is not part of the Consent Decree. It is an exhibit to the Consent Decree, not a legally enforceable part of it. Nor does the Consent Decree require DCPS or OSSE to maintain and enforce the SOP as originally

> drafted. In fact, the Consent Decree expressly allows for changes to the SOP so long as certain procedures are followed. See Consent Decree ¶ 54(a).

Memorandum Opinion and Order, Blackman v. District of Columbia, Civil Action No. 97-1629, Dkt. 2126 (D.D.C. Oct. 1, 2008) at 4. Count Two will be dismissed.

In Count Three plaintiffs allege a violation of their due process rights.[3] To determine whether plaintiffs' Fifth Amendment due process rights have been violated, the Court must determine whether plaintiffs were deprived of a protected interest, and, if so, whether they received the process to which they were due. See Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 538 (1985). As clarified by their opposition brief, plaintiffs assert they had a property interest in the renewal of their employment contracts, of which they were deprived without adequate process because, they argue, defendants did not provide them with an impartial tribunal in the selection process or an opportunity to appeal their non-selection. See Opp. at 3-4.

An employee has "a property interest in his job only if, under District of Columbia law, 'he did not serve in his job at his employer's 'will,' but he could be removed only 'for cause.'" Thompson v. Dist. of Columbia, 530 F.3d 914, 918 (D.C. Cir. 2008) (quoting Laureano-Agosto v. Garcia-Caraballo, 731 F.2d 101, 103 (1st Cir. 1984)). See also Sanders v. District of Columbia, 522 F. Supp. 2d 83, 90 (D.D.C. 2007) (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)) ("An individual has a property interest in his or her employment when he or she has a legitimate claim of entitlement to the job."). Plaintiffs were not permanent

---

[3] Only plaintiffs' due process claim under the Fifth Amendment is properly asserted because the Fourteenth Amendment does not apply to the District of Columbia. See Tafler v. District of Columbia, Civil Action No. 05-1563, 2006 U.S. Dist. LEXIS 81714 at *31 n.6 (citing Bolling v. Sharpe, 347 U.S. 497 (1954)).

employees of the District of Columbia; rather, they were serving under a one year contract which could be renewed. See Compl. ¶ 5. This status does not give rise to a property interest protected by the due process clause. Cf. Mktg. & Mgmt. Info., Inc. v. United States, 62 Fed. Cl. 126, 130 (Fed. Cl. 2004) ("where a contract is renewable solely at the option of the government, the government is under no obligation to exercise the option") (citing Gov't Sys. Advisors, Inc. v. United States, 847 F.2d 811, 813 (Fed Cir. 1988)). Plaintiffs' claim that defendants violated the due process clause of the Fifth Amendment will be dismissed.

With regard to plaintiffs' allegations that Ms. ImObersteg interfered with their employment contract, as noted by the District of Columbia defendants, this claim has no merit.[4] To state a sufficient claim for tortious interference with employment rights, plaintiffs must allege: (1) a legal contract existed; (2) the defendant had knowledge of the contract; (3) the defendant intentionally procured the contract's breach; and (4) damages resulted from the defendant's actions. See Bannum, Inc. v. Citizens for a Safe Ward Five, Inc., 383 F. Supp. 2d 32, 43 (D.D.C. 2005) (citing Cooke v. Griffiths-Garcia Corp., 612 A.2d 1251, 1256 (D.C. 1992)). As stated above, plaintiffs' contract with DCPS had expired and was not renewed. As a result, there was no contract in existence at the time Ms. ImObersteg allegedly interfered with it. Plaintiffs therefore cannot establish the first element of this tort. Moreover, they have not alleged, nor does it appear that they can allege, that DCPS's actions breached any contract

---

[4] The Court will assume that it has diversity jurisdiction over this claim because plaintiffs, who reside in the District of Columbia allege that Ms. ImObersteg lives in Arizona (although they have not alleged an amount in controversy pursuant to 28 U.S.C. § 1332).

(because no contract existed). Regardless of Ms. ImObersteg's conduct, therefore, plaintiffs cannot establish the third element of this claim. The Court will dismiss Count Five on its own motion.

For these reasons, all of plaintiffs' federal claims will be dismissed. When the federal law claims on which a court's jurisdiction is based have been dismissed, the court has discretion in deciding whether to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3). As the court of appeals has explained:

> [I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims.

Shekoyan v. Sibley Int'l, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726, (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); Holland v. Freeman United Coal Mining Co., 574 F. Supp. 2d 116, 135-36 (D.D.C. 2008). Retaining jurisdiction over plaintiffs' state law claims would require the Court to make substantive conclusions of law with regard to the District of Columbia Whistleblower Protection Act. For this reason among others, the balance of factors favors declining jurisdiction of the remaining state law claims.

For the reasons stated above, Counts Two, Three, and Five will be dismissed for failure to state a claim, and Counts One and Four will be dismissed because the Court declines to exercise supplemental jurisdiction over them. An Order to accompany this Memorandum Opinion will issue this same day.

                                                               /s/_____  
                                                          PAUL L. FRIEDMAN  
DATE: March 29, 2010                            United States District Judge